**In re Connie S. ALLEN, Debtor.**

**Bankruptcy No. 3–87–00770.**

United States Bankruptcy Court,
S.D. Ohio, W.D.

Jan. 22, 1991.

George Ledford, Englewood, Ohio, Trustee.

Daniel A. Nagle, Kettering, Ohio, for General Motors Acceptance Corp.

Scott G. Stout, Kettering, Ohio, for debtor.

DECISION ON ORDER GRANTING MOTION OBJECTING TO ALLOWANCE OF CLAIM OF GENERAL MOTORS ACCEPTANCE CORPORATION

THOMAS F. WALDRON, Bankruptcy Judge.

This proceeding, which arises under 28 U.S.C. § 1334(b) in a case referred to this

court by the Standing Order Of Reference entered in this district on July 30, 1984, is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)—matters concerning the administration of the estate, and (B)—allowance or disallowance of claims against the estate. Specifically, the issue presented to the court for determination is whether General Motors Acceptance Corporation's failure to notify the debtor of the sale of the automobile, which was security for GMAC's loan, bars GMAC from any unsecured claim.

This proceeding is before the court on the debtor's Motion Objecting To Allowance Of Claim Of G.M.A.C. (Doc. 28) and Memorandum In Support Of Argument (Doc. 50). In response to the debtor's objection, General Motors Acceptance Corporation filed a Memorandum Contra Motion Of Debtor Objecting To Allowance Of Claim Of General Motors Acceptance Corporation (Doc. 29) and Memorandum Of General Motors Acceptance Corporation (Doc. 49).

On May 14, 1986, the debtor, Connie S. Allen, purchased a 1986 Chevrolet Z28 Camaro under a retail installment contract (Doc. 48, Ex. V). General Motors Acceptance Corporation (GMAC) perfected a first lien on the automobile, evidenced on the automobile's certificate of title.

On March 13, 1987, the debtor filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code. The debtor listed its debt with GMAC as secured in the amount of $12,663.00 and unsecured in the amount of $3,197.00 (Doc. 8).

Not having received timely payments through the debtor's chapter 13 plan, GMAC obtained relief from the stay on October 2, 1989; however, the debtor refused to surrender the automobile to GMAC. As a result, on December 4, 1989, GMAC filed a complaint in replevin in the common pleas court of Montgomery County to recover the automobile (Doc. 48). Subsequently, on December 13, 1989, the Debtor surrendered the automobile to GMAC (Doc. 48). On December 15, 1989, a "Notice of Sale" letter was sent to the debtor's former attorney, Andrew M. Hughes, stating the time and place of the sale of the debtor's automobile. No notice was sent to the debtor. On January 17, 1990, the debtor's automobile was sold at a public sale at the Ohio Banc Auction. After computing all setoffs, credits, and additions, a deficiency in the amount of $7,768.26 resulted. GMAC filed an amended proof of claim for the deficiency amount.

## DISCUSSION

The sole issue before the court is whether GMAC is allowed a claim in the debtor's chapter 13 plan in the amount of the deficiency, when notice of the sale of the automobile was sent only to the debtor's attorney and not to the debtor. The debtor alleges that she did not receive notice of the sale, and that therefore, pursuant to O.R.C. § 1317.12 and § 1317.16, GMAC is barred from asserting a claim in the amount of $7,768.26 (Doc. 28 and Doc. 50).

In response to the debtor's objection (Doc. 29 and Doc. 49), GMAC contends that the provisions of the Ohio Revised Code requiring statutory notice to be given to a debtor are not applicable to proceedings arising under the Bankruptcy Code. Further, GMAC contends that although it obtained relief from the stay to repossess the debtor's automobile, it did not have relief from the stay to allow it to contact the debtor by sending a notice of the sale.

■ GMAC's contentions are without merit. The Bankruptcy Code makes it clear that Article 9 of the Uniform Commercial Code, as it is adopted by a state, governs consensual liens in personal property and fixtures and any claims arising from defaults under such agreement. *Leasing Service Corp. v. First Tenn. Bank Nat. Ass'n.*, 826 F.2d 434, 437 (6th Cir.1987); *In re Umbles Drew–Hale Pharmacy, Inc.*, 80 B.R. 421, 624 (Bankr.N.D. Ohio 1987). Further, a secured party may seek any appropriate relief from the stay in order to complete the procedural steps required by state law.

■ Section 1309.47 of the Ohio Revised Code sets forth the provisions governing a

secured party's right to dispose of collateral after a default. However, § 1309.47(F) states that this statute is "subject to the limitations of section 1317.16 of the Revised Code." Ohio Revised Code § 1317.16 is a provision contained within the Retail Installment Sales Act (RISA). The parties have conceded that the provisions of RISA are applicable to the issues in this proceeding.[1] Ohio Revised Code § 1317.16 governs the disposition of collateral and in pertinent part provides:

(A) A secured party whose security interest is taken pursuant to section 1317.071 [1317.07.1] of the Revised Code may, after default, dispose of any or all of the collateral only as authorized by this section.

(B) Disposition of the collateral shall be by public sale only. Such sale may be as a unit or in parcels and the method, manner, time, place, and terms thereof shall be commercially reasonable. *At least ten days prior to sale the secured party shall send notification of the time and place of such sale and of the minimum price for which such collateral will be sold, together with a statement that the debtor may be held liable for any deficiency resulting from such sale, by certified mail, return receipt requested, to the debtor at his last address known to the secured party, and to any persons known by the secured party to have an interest in the collateral.* In addition, the secured party shall cause to be published, at least ten days prior to the sale, a notice of such sale listing the items to be sold, in a newspaper of general circulation in the county where the sale is to be held. (Emphasis added).

Similarly, O.R.C. § 1317.12 sets forth the provisions pertaining to default, and in relevant part provides:

[I]f collateral for a consumer transaction is taken possession of by the secured party on default, the secured party shall, within five business days after taking possession, send to the debtor a notice setting forth specifically the circumstances constituting the default and the amount by itemization that the debtor is required to pay to cure his default. Any notice required by section 1309.47 or 1317.16 of the Revised Code may be included as part of the notice required by this section. A secured party who disposes of the collateral without sending notice required by this section may not recover the costs of retaking possession of the collateral and is not entitled to a deficiency judgment.

GMAC asserts that the "Notice of Sale" letter which was sent to the debtor's attorney is sufficient to satisfy the notice requirements of O.R.C. § 1317.12 and § 1317.16. The court notes that O.R.C. § 1317.12 and § 1317.16 explicitly state that the *debtor* is to be given notice. A debtor is defined as "a person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral, and includes the seller of accounts or chattel paper." O.R.C. § 1309.01(A)(4). In determining whether a party comes within the definition of the term debtor, the court notes:

[I]t is a cardinal rule of construction that where a statute is clear and unambiguous, there is "no occasion to resort to the other means of interpretation." *Slingluff v. Weaver* (1902), 66 Ohio St. 621, 64 N.E. 574, paragraph two of the syllabus. An "unambiguous statute is to be applied, not interpreted." *Sears v. Weimer* (1944), 143 Ohio St. 312, 28 O.O. 270, 55 N.E.2d 413, paragraph five of the syllabus. It is only where there is some doubt as to the meaning or ambiguity in the language of a statute that he rules of construction may be employed. *Slingluff, supra,* paragraph one of the syllabus. This is even true even if extraneous circumstances show that the legislature intended to enact a statute different from that which it did enact. *D.T. Wood-*

---

**1.** The issue of whether O.R.C. § 1309.47 or whether O.R.C. § 1317.16 applies was not raised; however, several courts have addressed this issue. *See Butz v. Society Nat. Bank of*

*Miami Valley,* 83 B.R. 459, 462 (S.D.Ohio 1987); *Huntington Nat. Bank v. Elkins,* 43 Ohio App.3d 64, 539 N.E.2d 1135, 1139 (1987).

*bury & Co. v. Berry* (1869), 18 Ohio St. 456, paragraph one of the syllabus.

*State v. Allen County Bd. of Comm'rs,* 32 Ohio St.3d 24, 512 N.E.2d 332, 335 (Ohio 1987). This court concludes that no ambiguity in the language of O.R.C. § 1309.01(A)(4), § 1317.16, and § 1317.12 exists, and therefore, the court is bound to adhere strictly to the language of the statutes. Because the debtor's attorney does not come within the definition of debtor, the court concludes that GMAC failed to comply with the statutory requirement that the secured party give notice of the sale of the collateral to the debtor.

When a creditor has failed to comply with the notice requirements of O.R.C. § 1317.16 and § 1317.12, the creditor is barred from asserting a claim for the deficiency and has no right to payment from the debtor. *Huntington Nat. Bank v. Stockwell,* 10 Ohio App.3d 30, 460 N.E.2d 303, 305 (Ohio App.1983). *See In re Lucas,* 28 B.R. 366, 370 (Bankr.S.D.Ohio 1982); (denying the creditor any claim against the debtor as a result of the creditor's failure to give notice pursuant to the less stringent notice requirements of O.R.C. § 1309.47(C)). *See also Liberty Nat. Bank of Fremont v. Greiner,* 62 Ohio App.2d 125, 405 N.E.2d 317 (1978).

Accordingly, the debtor's Motion Objecting To Allowance Of Claim Of G.M.A.C. (Doc. 28) is granted and General Motors Acceptance Corporation is denied an unsecured claim.

An order in accordance with this decision is simultaneously entered.

SO ORDERED.