HUNTINGTON BANK, APPELLEE, *v.*
FREEMAN, APPELLANT.

(No. 89-P-2051—Decided
November 24, 1989.)

*Robert G. Miller,* for appellee.
*Brent L. English,* for appellant.

MAHONEY, J. The defendant-appellant, Georgia M. Freeman, entered into a loan agreement for $3,818.22 with the plaintiff-appellee, Huntington Bank ("bank"), in order to purchase a 1981 Pontiac Grand LeMans automobile. The appellant signed a promissory note which was secured or "collateralized" by the automobile.

The appellant ceased making payments on the loan, and on January 22, 1988 the bank repossessed the car and later sold the car at a public auction. On March 11, 1988, the bank sued the appellant for $2,221.37, the deficiency on the promissory note.

The matter was tried to the court on October 3, 1988. At trial, the supervisor of the bank's recovery department, John Van Stratten, testified that a letter dated January 28, 1988 was mailed by certified mail to the appellant notifying her that the repossessed car would be sold at a public auction on February 13, 1988 at 10:00 a.m. for a minimum bid of $750. Van Stratten testified that he had no knowledge of when, where and how the car was actually sold. The appellant admitted upon cross-examination that she had seen the letter. There was no testimony as to if or when she had actually received the letter.

However, according to the bank's answers to interrogatories and the bank's final argument, the car was not sold on February 13, 1988 for a minimum of $750 but, instead, was sold on February 20, 1988 for $525. No notice of this second sale date was sent to the appellant. During final argument the bank's attorney speculated that perhaps the sale was held on February 20 because no minimum bid was received on February 13.

On October 19, 1988, the trial court entered judgment for the bank for $2,221.37 plus costs and interest from the date of judgment.

Appellant requested findings of fact and conclusions of law. The trial court asked each party to submit its proposed findings. On January 10, 1989, the trial court filed its findings of fact and conclusions of law. The court found that "the collateral vehicle was not sold on the original sale date as no minimum bid was received and the vehicle was subsequently sold on the 20th day of February, 1988."

The court further found that the sale was commercially reasonable and that the Retail Installment Sales Act did not apply to the bank, which is a "financial institution" within the definition of R.C. 5725.01.

Based on the bank's exhibits and the testimony of its two witnesses, John Van Stratten and the appellant who was called upon cross-examination, the trial court entered judgment for the bank.

Appellant has filed a timely appeal from the trial court's findings of fact and conclusions of law and sets forth the following assignments of error:

"1. The trial court erred to the prejudice of the Appellant by not applying the notice and filing requirements of Chapter 1317 of the Ohio Revised Code to this transaction.

"2. The trial court erred to the prejudice of the Appellant by finding that Chapter 1317 of the Ohio Revised Code does not apply to this transaction because the secured party is a Bank.

"3. The trial court erred in holding that Appellant was timely notified of the sale of her collateral.

"4. The trial court erred in holding that the sale was commercially reasonable.

"5. The trial court erred by not finding that Appellee failed to sustain its burden of proof on the questions of notice and commercial reasonability."

Although the form of appellant's brief does not comply with Rule VIII of the Local Rules of this appellate district in that the assignments of error do not necessarily correspond to the appellant's arguments, this discussion will address those arguments which are discernible.

In essence, the appellant argues that the bank is not entitled to a deficiency judgment because it failed to comply with the notice requirements of the Retail Installment Sales Act, R.C. Chapter 1317, and because it failed to prove that the sale of the automobile was commercially reasonable.

The dispositive issue in the first two assignments of error is whether the Retail Installment Sales Act ("RISA"), R.C. Chapter 1317, applies to the appellee bank.

Numerous appellate courts, including this court, have decided this issue and have held that banks are exempt from complying with the notice requirements of RISA, R.C. Chapter 1317.

In *Lake Natl. Bank* v. *Galliher* (Oct. 22, 1982), Lake App. No. 9-055, unreported, this court held that banks are exempt from the notice requirements of R.C. 1317.12 under the definition of "consumer transaction" as defined by R.C. 1317.01(P).

R.C. 1317.12 sets forth the notice requirements the "secured party in a retail installment contract" must comply with in order to recover repossession costs and be entitled to a deficiency judgment.

"Retail installment sale" is defined in R.C. 1317.01(A) as:

"* * * every retail installment contract to sell specific goods, every consumer transaction in which the cash price may be paid in installments over a period of time * * *."

Within this definition, the loan agreement between the bank and the appellant would have to be a "consumer transaction."

R.C. 1317.01(P) defines "consumer transaction" as:

"* * * a sale, lease, assignment, or other transfer of an item of goods, or a service, *except those transactions between persons, defined in* sections 4905.03 and *5725.01 of the Revised Code, and their customers * * *."* (Emphasis added.)

R.C. 5725.01(A) defines "financial institution" as:

"* * * every person who keeps an office or other place of business in this state and engages in the business of receiving deposits, lending money, and buying or selling bullion, bills of exchange, notes, bonds, stocks, or other evidences of indebtedness with a view to profit * * *."

Thus, in this case *sub judice,* the loan agreement between the bank, which is clearly a financial institution, and appellant, who is the bank's customer, is not a "consumer transaction" as defined in R.C. 1317.01(P) and, therefore, the notice requirements of R.C. 1317.12 do not apply to the bank. See, also, *Huntington Bank* v. *Sabeiha* (June 8, 1989), Cuyahoga App. No. 56495, unreported; *Bank One, Dayton, N.A.* v. *Doughman* (Nov. 16, 1988), Hamilton App. No. C-880001, unreported; *Huntington Natl. Bank* v. *Elkins* (1987), 43 Ohio App. 3d 64, 539 N.E. 2d 1135; *Euclid Natl. Bank* v. *Hodge* (Dec. 12, 1985), Cuyahoga App. No. 49705, unreported.

Although the Ohio Supreme Court has never directly held that banks are exempt from RISA, in *Blon* v. *Bank One, Akron, N.A.* (1988), 35 Ohio St. 3d 98, 100, 519 N.E. 2d 363, 367, in footnote three the court stated:

"Although not raised by the parties on appeal, we note our agreement with the lower courts that, because Bank One is a financial institution under R.C. 5725.01(A), the transaction at issue is excepted from application of Ohio Retail Installment Sales Act by R.C. 1317.01(P) and the Ohio Con-

sumers Sales Practices Act by R.C. 1345.01(A)."

Appellant's first and second assignments of error are not well-taken.

The issues in appellant's third, fourth and fifth assignments of error are whether the sale of the collateral was commercially reasonable and whether the bank proved that the sale was commercially reasonable.

First, appellant argues that the bank failed to prove that it complied with the repossession requirements of R.C. Chapter 1309, specifically sections 1309.46(A) and 1309.47(C).

R.C. 1309.46 gives the secured party the right to the possession of the collateral upon default, and R.C. 1309.47 gives the secured party the right to dispose of the collateral after default. Guidelines for the disposition of collateral are set forth in R.C. 1309.47(C), which provides in pertinent part:

"Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. *Sale or other disposition may be* as a unit or in parcels and *at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable.* Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, *reasonable notification of the time and place of any public sale* or reasonable notification of the time after which any private sale or other intended disposition is to be made *shall be sent by the secured party to the debtor if he has not signed after default a statement renouncing or modifying his right to notification of sale.* In the case of consumer goods no other notification need be sent. * * *" (Emphasis added.)

The secured party has the burden

of proving that the sale of collateral was commercially reasonable pursuant to R.C. 1309.47. *First Natl. Bank* v. *Turner* (1981), 1 Ohio App. 3d 152, 1 OBR 463, 439 N.E. 2d 1259; *Winters Natl. Bank & Trust Co.* v. *Saker* (1979), 66 Ohio App. 2d 31, 20 O.O. 3d 76, 419 N.E. 2d 890; *Peoples Acceptance Corp.* v. *Van Epps* (1978), 60 Ohio App. 2d 100, 14 O.O. 3d 75, 395 N.E. 2d 912.

The appellant argues that the bank failed to prove that appellant defaulted on her loan, that reasonable notice of the public sale was given to the appellant and that the collateral was sold in a commercially reasonable manner.

First, appellant argues that the bank did not prove that she defaulted on the loan. However, at the hearing, the trial court admitted the bank record wherein it reflects that appellant was delinquent in her monthly payments since August 14, 1987 and owed a balance of $2,221.37. This record was properly admitted by the court as a business record exception to the hearsay rule pursuant to Evid. R. 803(6).

Next, appellant argues that the bank failed to prove that it gave her reasonable notice of the public sale. Appellant contends that, although the bank's witness testified that from the bank's file it appeared that a letter dated January 28, 1988 was sent to appellant's address by certified mail notifying her of the repossession and public sale of the collateral on February 13, 1988 for a minimum bid of $750, the witness did not know if the letter was ever sent and there was no receipt in the file showing that the appellant received the letter. The appellant was called by the bank on cross-examination and testified that she had seen the letter, but there was no actual testimony that she received it or saw it before the February 13 auction.

The secured party's failure to comply with the notice requirement of R.C. 1309.47(C) is an absolute bar to the recovery of a deficiency judgment, even though the sale of the collateral was otherwise commercially reasonable. *Motor Car Co.* v. *Textile-Tech* (M.C. 1981), 68 Ohio Misc. 25, 22 O.O. 3d 354, 428 N.E. 2d 882; *Liberty Natl. Bank* v. *Greiner* (1978), 62 Ohio App. 2d 125, 16 O.O. 3d 291, 405 N.E. 2d 317.

The notice requirement of R.C. 1309.47(C) is satisfied when the secured party takes reasonable steps to notify the debtor. A secured party who sends notice to the debtor satisfies the requirement and does not have to prove the actual receipt of the notice. *BancOhio Natl. Bank* v. *Freeland* (1984), 13 Ohio App. 3d 245, 13 OBR 298, 468 N.E. 2d 941.

Accordingly, in the case *sub judice* the bank need not prove that the appellant received the notice but only needs to prove that it sent her notice. Van Stratten, the bank's witness, identified Exhibit B as a letter that was sent to the appellant by certified mail. On cross-examination, the witness admitted he had no personal knowledge whether the letter was, in fact, ever mailed, nor did he have any personal knowledge of when, in fact, the sale occurred.

There is evidence in the record that the collateral was sold on February 20, 1988 for $525. There is absolutely no evidence in the record that the bank even attempted to notify appellant of this sale which occurred seven days later for thirty percent less than the stated minimum in the January 28, 1988 letter.

The bank argues that the appellant did not present evidence that she attended the sale of February 13, 1988 and that she was able to purchase the vehicle for $750 on that date.

This argument is without merit. The burden of proof is on the bank to

show that notice was sent. Appellant has no duty to present evidence of her attendance at the sale.

The record shows that the bank failed to prove that it sent any notice to the appellant of the actual date, place, time and minimum bid required in the sale of her collateral. By failing to send this notice, the bank has violated R.C. 1309.47(C) and, since notice is a condition precedent to recovery, the bank is not entitled to a deficiency judgment. *Liberty Natl. Bank* v. *Greiner, supra.*

Accordingly, appellant's argument on the notice requirement of R.C. 1309.47(C) has merit.

Finally, appellant argues that the bank failed to prove that it sold the collateral in a commercially reasonable manner.

Based on the information contained in the January 28 letter, Van Stratten testified that the collateral was sold at a public auction, but he had no knowledge of the value of the vehicle or when it was sold. An advertisement of the public sale was presented into evidence. The advertisement does not indicate which paper it ran in or on what day or for how long, and it does not correctly identify the time, place, date and the collateral to be sold, to-wit: a 1981 Pontiac LeMans. However, the advertisement states that the public sale of the car will be on February 13, 1988 at 10:00 a.m., while the actual sale of the car was on February 20, 1988. There is no evidence that the bank placed an advertisement informing the public that the sale of the collateral would be held on February 20, 1988.

The burden of proof is on the bank to show that the collateral was sold in a commercially reasonable manner. The bank has not met its burden because it has failed to show that it advertised the February 20, 1988 public sale of the collateral.

It has been recognized that "the ultimate aim of R.C. 1309.47 is that the highest price be realized from the collateral sold for the benefit of all parties." *First Natl. Bank* v. *Turner, supra,* and that:

"A secured party should always attempt to sell the repossessed collateral for the best price possible, and where there is a gross discrepancy between the disposal and the original sale price of the repossessed collateral, there must be some affirmative showing on the part of the secured party that the terms of the repossession sale were commercially reasonable." *Peoples Acceptance Corp.* v. *Van Epps, supra,* at paragraph two of the syllabus.

Although it is true that "[t]he fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner, * * *" R.C. 1309.50(B), the fact that the bank failed to advertise a public sale to the public is prima facie evidence that the sale was not commercially reasonable. In order to get the best and highest price possible at a public sale, the public needs to know about the sale so that all members of the public interested in the collateral can attend and bid.

Black's Law Dictionary (5 Ed. 1979) 1108, defines "public sale" as a "[s]ale at auction of property upon notice to public of such." Therefore, since there was no notice to the public of the February 20, 1988 sale, it could not qualify as a "public sale." It logically follows that the bank's assertion that it had a "public sale" is erroneous and it is clear that it was not commercially reasonable.

Therefore, appellant's third, fourth and fifth assignments of error are well-taken.

For the foregoing reasons, appellant's first and second assignments of

error are overruled and appellant's third, fourth and fifth assignments of error are sustained; and the judgment of the trial court is reversed and judgment is entered for appellant.

*Judgment reversed.*

CHRISTLEY, P.J., and FORD, J., concur.